**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JON K. HEYER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 14 C 854 |
| | ) | |
| PIERCE & ASSOCIATES, P.C., | ) | Magistrate Judge Finnegan |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

On January 9, 2017, the Court issued a Memorandum Opinion and Order granting partial summary judgment to Defendant Pierce & Associates, P.C. ("Pierce") as to Plaintiff Jon K. Heyer's claim for relief under Sections 1692e, e(5) and e(10) of the Fair Debt Collection Practices Act ("FDCPA"). 15 U.S.C. § 1692 *et seq*. In that same order, the Court also granted partial summary judgment in favor of Plaintiff on his claim under Section 1692e(11) of the statute. At the next scheduled status hearing on February 8, 2017, Plaintiff requested leave to file a motion to reconsider within 21 days, which he then filed on March 1, 2017. In that motion, which he brings pursuant to Federal Rule of Civil Procedure 59(e) or 60(b), Plaintiff seeks reconsideration of the finding that Pierce did not violate Sections 1692e, e(5) or e(10), arguing that the Court made manifest errors of fact and law that warrant judgment in his favor. For the reasons set forth here, the motion is denied.

**DISCUSSION**

**A.     Standard of Review**

The Federal Rules of Civil Procedure do not specifically provide for motions to "reconsider." How courts treat such motions turns (in part) on whether the subject of the motion is an interlocutory order or a final judgment. Plaintiff asks the Court to evaluate his motion using the standards associated with challenging final judgments under Rule 59(e) or Rule 60(b). *Laborers' Pension Fund v. Safe Environmental Corp.*, No. 13 C 180, 2013 WL 3200070, at *1 (N.D. Ill. June 24, 2013) (citing *Talano v. Northwestern Med. Faculty Found., Inc.*, 273 F.3d 757, 760 n.1 (7th Cir. 2001)); *Stephens v. City of Lawrence*, No. 1:13-CV-1503-TWP-DML, 2015 WL 8773447, at *1 (S.D. Ind. Dec. 14, 2015). Both of those Rules are subject to time limitations.

Rule 59(e) requires that motions to alter or amend a judgment be filed within 28 days of the judgment. FED. R. CIV. P. 59(e). Motions seeking relief from judgment under Rule 60(b) need only be filed within a "reasonable time," but they must be based on "mistake, excusable neglect, newly discovered evidence, or fraud." *Kiswani v. Phoenix Sec. Agency, Inc.*, 584 F.3d 741, 742-43 (7th Cir. 2009); *Scott v. Bender*, 948 F. Supp. 2d 859, 864 (N.D. Ill. 2013). In addition, Rule 60(b) is an "extraordinary remedy and is granted only in exceptional circumstances." *Karraker v. Rent-A-Center, Inc.*, 411 F.3d 831, 837 (7th Cir. 2005). *See also Scott*, 948 F. Supp. 2d at 865 (Rule 60(b) "was designed to address mistakes attributable to special circumstances, *not* to address erroneous applications of law.") (emphasis in original).

Plaintiff did not file his motion within the 28-day time period required by Rule 59(e), and he fails to identify any exceptional circumstances warranting the extraordinary relief

contemplated by Rule 60(b). Nevertheless, Plaintiff is not actually seeking reconsideration of a final judgment here. Since the Court's order granting partial summary judgment did not dispose of all claims and parties, it amounted to an interlocutory order, and courts have inherent authority under Rule 54(b) to reconsider interlocutory orders "at any time before entering a final judgment." *Wiegel v. Stork Craft Mfg., Inc.*, 891 F. Supp. 2d 941, 944 (N.D. Ill. 2012).[1] In this jurisdiction, Rule 54(b) is governed by a "manifest error" standard of review. *Id. See also Armada (Singapore) Pte Ltd. v. Amcol Int'l Corp.*, No. 13 C 3455, 2017 WL 1862836, at *1 (N.D. Ill. May 9, 2017) (reconsideration of interlocutory orders under Rule 54(b) is "appropriate only to correct manifest errors of law or fact.") (internal quotations omitted).

The Seventh Circuit has long cautioned that appropriate issues for reconsideration "rarely arise and the motion to reconsider should be equally rare." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). This is because the court's orders are "not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Geraty v. Village of Antioch*, No. 09 C 6992, 2015 WL 127917, at *3 (N.D. Ill. Jan. 8, 2015) (quoting *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988)). Motions to reconsider "serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence."

---

[1] Not surprisingly, this Court prefers to consider motions to reconsider promptly after the issuance of the challenged order rather than almost two months later as happened here and in at least two other similar cases filed by Mr. Kasalo. *See Washington v. Portfolio Recovery Assocs., LLC*, 14 C 3854 (partial summary judgment order issued on 9/29/2016; at next status on 10/19/2016, Plaintiff sought leave to file a motion to reconsider on future date); *Paz v. Portfolio Recovery Assocs., LLC*, 14 C 9751 (partial summary judgment order issued on 4/14/2016; at next status on 5/10/2016 (to set trial date), Plaintiff sought leave to file a motion to reconsider on future date). To avoid such delay, the Court will set specific deadlines for motions to reconsider in future cases.

3

*Patrick v. City of Chicago*, 103 F. Supp. 3d 907, 911-12 (N.D. Ill. 2015) (quoting *Conditioned Ocular Enhancement, Inc. v. Bonaventura*, 458 F. Supp. 2d 704, 707 (N.D. Ill. 2006)). Manifest errors occur "where the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee*, 906 F.2d at 1191.

A motion to reconsider "is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269-70 (7th Cir. 1996). A party seeking reconsideration "bears a heavy burden," *Patrick*, 103 F. Supp. 3d at 912, and the decision whether to grant a motion to reconsider "is a matter squarely within the Court's discretion." *Darvosh v. Lewis*, No. 13 C 4727, 2015 WL 5445411, at *3 (N.D. Ill. Sept. 11, 2015) (citing *Caisse Nationale de Credit Agricole*, 90 F.3d at 1270).

**B.  Background**

Before turning to the alleged errors and bases for reconsideration, the Court briefly reviews the underlying memorandum opinion. Plaintiff defaulted on a home mortgage obligation to Bank of America, NA ("BANA"). BANA (through a subsidiary) retained the law firm of Pierce & Associates to bring a foreclosure action. *Heyer v. Pierce & Assocs., P.C.*, No. 14 C 854, 2017 WL 75739, at *1 (N.D. Ill. Jan. 9, 2017). After obtaining a judgment against Plaintiff, BANA began working with him on a modification to his loan. On March 15, 2012, BANA approved Plaintiff for a trial loan modification requiring that he timely make all trial period payments and "meet all of the eligibility requirements of your

4

modification program." Plaintiff "accepted the offer and made the required trial period payments in April, May and June 2012." *Id.* A few months later, in January 2013, Fannie Mae (the entity providing the financing for the loan modification) approved a permanent modification of Plaintiff's loan. There was a problem, however, because BANA believed there was a judgment encumbering Plaintiff's property. *Id.* at *2. BANA informed Pierce that until the judgment was cleared, and Plaintiff provided clear title stamped and validated from the county recorder's office as required by Fannie Mae, it would not be executing the permanent modification. *Id.*

Plaintiff denied that there was any lien on his property and called Pierce on March 7, 2013 to explain that he thought the judgment in question was against a totally different person, John C. Heyer. He sent Pierce a copy of a Memorandum of Judgment that was entered against Robin Naser on April 7, 2005, in a case where John C. Heyer also appears in the caption as a named defendant. *Id.* Pierce forwarded the information to BANA, but on March 18, 2013, the bank instructed Pierce to proceed with a sale of Plaintiff's property. BANA reiterated the "OK" to proceed in April 2013, at which time Pierce set a sale date of August 29, 2013. *Id.* at *3.

On August 7, 2013, Pierce mailed Plaintiff (and then filed with the foreclosure court) a "Notice of Sale Pursuant to Judgment of Foreclosure Under Illinois Mortgage Foreclosure Act." *Id.* Pierce received another "OK" to proceed with the sale from BANA on August 14, 2013, and on August 15, 2013, BANA provided "written certification . . . that . . . there is no reason to delay the scheduled sale." A week later, however, BANA instructed Pierce to postpone the sale, and on August 30, 2013, BANA requested that Pierce cancel the sale entirely, which Pierce did. *Id.* at *4. On November 19, 2013, BANA

5

sent Plaintiff a letter stating that he had successfully completed the trial modification and had been approved for a permanent loan modification. At BANA's direction, Pierce voluntarily dismissed the foreclosure case against Plaintiff in February 2014. *Id.*

Plaintiff filed suit alleging that the August 7, 2013 Notice of Sale was false and misleading in violation of the FDCPA because it: (1) threatened to sell his property at a time when that could not legally occur as prohibited by Section 1692e(5), and so was generally deceptive under Sections 1692e and e(10); and (2) failed to identify Pierce as a debt collector as required by Section 1692e(11). On January 9, 2017, the Court granted partial summary judgment in favor of Pierce on the first set of claims.[2] *Id.* at *11. The Court rejected Plaintiff's theory that the Notice of Sale threatened an action that was legally impossible under Section 1692e(5), and so misleading under Section 1692e(10), because a sale would have constituted "a breach by BANA of a contract with Plaintiff." *Id.* at *8. As the Court explained, the contract in question could not have been the November 19, 2013 permanent loan modification because it did not exist when Pierce sent the Notice of Sale months earlier on August 7, 2013. *Id.* at *9 (the focus must be on "the facts as they existed on the day the Notice was sent.").

The Court held that the March 15, 2012 trial loan modification also did not support Plaintiff's FDCPA claim even though BANA ultimately accepted that he had satisfied the required terms. In the Court's view,

> it is not enough for Plaintiff to prove that sale of the property would have given rise to a successful breach of contract claim against BANA in order to establish an FDCPA violation against Pierce. Where, as here, Plaintiff and BANA had a dispute regarding eligibility for a permanent loan modification, Pierce's liability for sending the Notice of Sale cannot hinge on whether a judge or jury is eventually persuaded that BANA would have been in breach

---

[2] Plaintiff does not challenge the Court's grant of partial summary judgment in his favor on the claim brought pursuant to Section 1692e(11).

6

of contract had it proceeded with the foreclosure sale. Instead, the focus must be on whether, on the day the Notice was sent by Pierce, it was legally impossible for the Property to be sold at auction in the Foreclosure Case such that Pierce made a false statement.

*Id.* at *10. Since BANA had a valid judgment against Plaintiff, and both BANA and Pierce intended to sell the property as of August 7, 2013, the threat of sale was not legally impossible. *Id.* ("This Court declines to expand liability under Section 1692e(5) by construing that statute to mean that an action 'cannot legally be taken' if it *can* be taken but doing so may give rise to a separate cause of action for breach of contract and damages.") (emphasis in original). For similar reasons, the Court also was not persuaded that "a reasonable consumer who knew the bank was refusing to sign off on a permanent modification would be deceived by the Notice." *Id.* at *11.

## C. Alleged Errors of Fact

Plaintiff begins by identifying what he claims are factual errors requiring that the decision against him be reversed. (Doc. 102, a 2-6). He first disputes the Court's observation in a footnote that "[n]either party has produced a copy of the judgment cited by BANA or any other information about it." *Heyer*, 2017 WL 75739, at *2 n.2. In support, Plaintiff notes that the Memorandum of Judgment he sent to Pierce (which concerned John C. Heyer) showed a judgment amount of $78,885.07, (Doc. 73-3, at 82), which he says "corresponds exactly" to the judgment referenced in a January 7, 2013 collection note from Pierce stating: "The title report was showing a judgment against the borrower from (Central Food Service for $78,885.07). Its [sic] showing it was recorded in 2005 and we cant [sic] move forward unless it is clear." (Doc. 74-6, Ex. O, at 50, Pierce0049; Doc. 102, at 2). Plaintiff claims this constitutes evidence that the lien BANA was relying on to deny him a permanent modification is the one against John C. Heyer. (Doc. 102, at 2).

7

He thus argues that the Court erred in stating it was "unable to find as a matter of law that there was no lien encumbering the Property." *Heyer*, 2017 WL 75739, at *8.

As a preliminary matter, it must be noted that Plaintiff never directed the Court to language found in the January 7, 2013 collection note in his summary judgment briefs. Though the language does appear in paragraph 38 of his Local Rule 56.1 Statement of Material Facts, (Doc. 73-5, at 8), Plaintiff never quoted the text he now relies upon. Indeed, the single reference to paragraph 38 is as part of a string cite aimed at supporting the general proposition that "BANA made a loan modification offer to Plaintiff that Defendant was aware of." (Doc. 87, at 2). As the Seventh Circuit has observed, "[j]udges are not 'like pigs, hunting for truffles buried in briefs.' . . . Rather, it is '[a]n advocate's job . . . to make it easy for the court to rule in his client's favor.'" *Hoosier v. Greenwood Hospitality Mgmt. LLC*, 32 F. Supp. 3d 966, 972 (N.D. Ill. 2014) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) and *Dal Pozzo v. Basic Machinery Co.*, 463 F.3d 609, 613 (7th Cir. 2006)).

Moreover, Plaintiff's argument ignores the Court's finding that "even assuming the record established the absence of a lien, or established that BANA mistakenly *was* relying on the Memorandum of Judgment described above as the basis for withholding the permanent modification, this would not change the outcome here." *Heyer*, 2017 WL 75739, at *8 (emphasis in original). The Court went on to explain in great detail why Pierce did not violate the FDCPA merely because the threat to sell Plaintiff's property, if carried out, would have given rise to a separate breach of contract claim against BANA. *Id.* at *9-10. Plaintiff may disagree with the analysis, but the Court will not revisit it here. Nor will the Court consider anew Plaintiff's related assertions, addressed in detail in the

8

previous opinion, that: he was eligible for a permanent modification when Pierce sent the Notice of Sale on August 7, 2013; BANA's belief to the contrary was incorrect; and the Notice therefore amounted to a breach of contract redressable under the FDCPA. (Doc. 102, at 3, 4). *See Caisse Nationale de Credit Agricole,* 90 F.3d at 1269 (a motion to reconsider "is not an appropriate forum for rehashing previously rejected arguments.").

For similar reasons, there is no merit to Plaintiff's contention that the Court committed manifest error by misconstruing his statement that the March 15, 2012 trial modification "ended on June of 2012." (Doc. 102, at 5; Doc. 73-5 ¶ 22). The Court found it inconsistent for Plaintiff to claim the agreement had "ended" in June 2012 but could still be the basis for his theory that BANA would be in breach of that agreement if it sold his property months later in August 2013, and that Pierce therefore violated the FDCPA by threatening to do so. *Heyer*, 2017 WL 75739, at *9. Plaintiff objects that paragraph 22 "merely states the date upon which Plaintiff completed the trial modification successfully [and] does not suggest that the agreement was not in effect." (Doc. 102, at 5). Putting aside that Plaintiff's paragraph is poorly crafted, the Court proceeded to explain why the breach of contract theory of liability failed in any event. *Heyer*, 2017 WL 75739, at *9-10. Plaintiff disagrees with the Court's reasoning, but that is not a basis for granting a motion to reconsider. *See In re Weinhold*, 393 B.R. 623, 638 (Bankr. E.D. Wis. 2008) (motions to reconsider "are not appropriate to simply revisit old arguments.").

Plaintiff next challenges an observation the Court made regarding the scope of discovery. The Court found it significant that Plaintiff had filed a separate lawsuit against BANA alleging (in part) that the bank "was in breach of the agreement to provide the promised loan modification," which he settled in May 2014. *Heyer*, 2017 WL 75739, at *4

9

n.4. In the Court's view, if Plaintiff had persisted in his breach of contract claim against BANA, discovery likely would have focused on such issues as "the eligibility requirements for the permanent loan modification, the details of the 'lien,' and whether BANA was entitled under the agreement to insist that Plaintiff provide evidence of clean title . . ." *Id.* at *10. For reasons already stated, the Court will not revisit Plaintiff's claim that "he was in fact eligible" for the permanent modification. (Doc. 102, at 3); *Caisse Nationale de Credit Agricole,* 90 F.3d at 1269. Plaintiff also insists that he had no need to provide clear title as demonstrated by the fact that he ultimately secured a permanent modification without it. (Doc. 102, at 3-4). That BANA ultimately decided in November 2013 to accept that Plaintiff's title was clear based only on his representation, however, does not establish that Plaintiff therefore had proof of clear title as of August 7, 2013, much less that the sale of his property was legally impossible or that the Notice of Sale was false or misleading in violation of the FDCPA.

To summarize, Plaintiff has not identified any manifest errors of fact supporting reconsideration of the Court's decision to grant summary judgment in favor of Pierce on his claims under Sections 1692e, e(5) and e(10). The motion to reconsider on that basis is denied.

D.  **Alleged Errors of Law**

Plaintiff maintains that the Court should still grant his motion to reconsider based on manifest errors of law. He first argues that the Court should "determine here and now in this case, based on the facts presented, whether selling the Property would have violated the agreement between BANA and Plaintiff." (Doc. 102, at 4). In other words, Plaintiff wants the Court to find that BANA committed breach of contract, and that Pierce

10

therefore violated the FDCPA by threatening to sell his property. The cases Plaintiff relies on do not appear in his summary judgment briefs and merely set forth some general requirements for a binding contract. (*Id.* at 5-6) (citing *Calo, Inc. v. AMF Pinspotters, Inc.*, 31 Ill. App. 2d 2, 9, 176 N.E.2d 1, 5 (1st Dist. 1961) ("Acceptance of an offer is an expression of assent to the terms thereof."); *Moore v. Lewis*, 51 Ill. App. 3d 388, 392, 366 N.E.2d 594, 599 (1st Dist. 1977) ("[A]n offer does not ripen into a contract until it is accepted.")).

The problem for Plaintiff is that this is not a breach of contract case and BANA is not a party. Plaintiff cites no authority for the proposition that a judge or jury hearing an FDCPA case either can or should effectively decide a breach of contract claim by a plaintiff against a non-party, and (if a breach is found) use that finding to conclude that the defendant's action was "legally impossible" so violated the FDCPA. Also unpersuasive is Plaintiff's assertion that Pierce can itself be liable for breach of a contract between Plaintiff and BANA. (Doc. 102, at 5) (citing *Amelco Elec. Co. v. Arcole Midwest Corp.*, 40 Ill. App. 3d 118, 351 N.E.2d 349 (1st Dist. 1976)). The *Amelco Elec. Co.* court stated that "a party *named in the contract* may by his acts and conduct become bound by its provisions even though he has not signed it." *Id.* at 124, 351 N.E.2d at 354 (emphasis added). Pierce is neither named in, nor a party to, the loan modification agreements. In fact, Pierce had no knowledge of the March 15, 2012 agreement at all until Plaintiff told him about it in June 2012. *Heyer*, 2017 WL 75739, at *2 (as of June 2012, Pierce had "no record of a loan modification.").

Plaintiff next objects that the Court improperly concluded that he could only prevail on his FDCPA claim by showing that the sale of the property was legally impossible under

Section 1692e(5), while ignoring that Pierce could also be liable under Section 1692e generally, or under Section 1692e(10). (Doc. 102, at 7). Section 1692e prohibits the use of "false, deceptive, or misleading representations or means in connection with the collection of any debt," while Section 1692e(10) proscribes "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt . . ." 15 U.S.C. § 1692e, e(10). Plaintiff argues that even if the threatened sale of his property was not legally impossible, it still violated the FDCPA by attempting to collect money "where there [was] no contractual basis" to do so. (Doc. 102, at 8).

This argument is premised on Section 1692f(1), which proscribes the use of unfair or unconscionable means to collect or attempt to collect "any amount . . . unless such amount is expressly authorized by the agreement creating the debt." 15 U.S.C. § 1692f(1). Plaintiff interprets this provision to mean that "a breach of an agreement, such as the collection of an amount of a debt that is unsupported by an agreement governing the debt, violates the FDCPA." (Doc. 102, at 8). He then cites a string of cases that purportedly support this proposition. Unfortunately for Plaintiff, he concedes that he never pled a violation of Section 1692f(1), so this Court had no occasion to consider the contours of any such claim, or interpret that provision of the statute. (*Id.*). Plaintiff likewise made no reference to Section 1692f(1) in his summary judgment briefs.[3]

Instead, Plaintiff waited until the oral argument and then stated in conclusory fashion that Section 1692f(1) is "instructive" on his Section 1692e claim because it shows that "if something is not allowed to go forward contractually, then that violates the law."

---

[3] The First Amended Complaint alleged a violation of Section 1692f(6), (Doc. 8), but it was not part of the summary judgment briefing and Plaintiff affirmatively waived that claim during oral argument on October 11, 2016. (Tr. of 10/11/16 hearing).

(Tr. of 10/11/16 hearing). According to Plaintiff, "almost always when you find a violation of Section 1692f(1) you'll find a violation of 1692e." (*Id.*). The only case Plaintiff cited was *Acosta v. Credit Bureau of Napa County*, No. 14 C 8198, 2015 WL 1943244 (N.D. Ill. Apr. 29, 2015), where the defendant credit bureau sought to collect on a credit card debt and sent the plaintiff a letter offering several payment options, one of which was "'Pay via Credit Card. ($14.95 Chase Receivables processing fee where applicable).'" *Id.* at *1. The plaintiff alleged that the letter violated the FDCPA by "expressly or tacitly misrepresent[ing] that the $14.95 credit card processing fee could lawfully be charged." *Id.*

In declining to dismiss the Section 1692f(1) claim, the court noted that processing fees are only improper under that provision if they result in the debt collector recovering additional compensation. They do not violate the statute if they constitute a "pass-through fee" such as where "a credit card company . . . charges the debt collector $14.95 to process credit card payments and, in turn, the debt collector charges debtors the same amount if they pay by credit card." *Id.* at *2. Since the record did not yet show whether the processing fee at issue was a pass-through fee, dismissal was not appropriate. *Id.* at *3. The court also denied the motion to dismiss the Section 1692e claims, reasoning that "[i]f the debt collection letter violates Section 1692f(1) by representing that the processing fee is permissible, then Defendant also would be in violation of Section 1692e." *Id.* at *4.

Here, this Court had no reason to determine whether Pierce's actions violated Section 1692f(1) since that was never part of the case. Plaintiff's suggestion that the Court should have done so anyway, and then used that determination as a basis for finding a violation of Section 1692e, is entirely specious. Moreover, it is not clear how a

case involving credit card processing fees bears on Pierce's liability for sending a notice to sell property at a time when it both intended for this to happen, and had a valid judgment in hand allowing it to do so. A reasonable consumer in Plaintiff's position, who knew that BANA was refusing to sign off on a permanent modification because it believed (even if incorrectly) that there was a lien against his property, would not be deceived by the Notice of Sale, and so it is not false or misleading under Section 1692e. *See Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012) ("The unsophisticated consumer may be 'uninformed, naïve, [and] trusting,' . . . but is not a dimwit, has 'rudimentary knowledge about the financial world,' and is 'capable of making basic logical deductions and inferences.'").[4]

Plaintiff finally argues that the Court erred in concluding that there was no violation of Section 1692e(5) because BANA had authorized Pierce to conduct a sale as of the August 7, 2013 notice date. Specifically, Plaintiff claims that BANA only gave Pierce the "OK" to proceed to sale on August 14, 2013, or seven days *after* it sent the Notice of Sale. (Doc. 102, at 10-11). In support, Plaintiff cites an October 11, 2016 email in which the Court asked Pierce to clarify the timeline when the file was on hold for "loss mitigation." (Doc. 102-1, at 5). The Court asked "[w]here in the record does it show the 4/2013 hold was lifted, aside from the 8/14/13 OK to proceed with sale." (*Id.*). Based on this communication, Plaintiff concludes that the Court "recognized" that Pierce did not have

---

[4] The Court declines to consider Plaintiff's additional Section 1692f(1) cases that were never cited to the Court or analyzed in any way. (Doc. 102, at 8-9). *See also Lopez v. Newell Rubbermaid*, No. 09 C 5551, 2011 WL 2292324, at *2 (N.D. Ill. June 3, 2011) (citing *McCoy v. Maytag Corp.*, 495 F.3d 515, 525 (7th Cir. 2007)) ("[C]ursory and undeveloped arguments are waived."). One case, *Rehman v. Pierce & Assocs., P.C.*, No. 16 C 5178, 2017 WL 131560 (N.D. Ill. Jan. 13, 2017), was issued after this Court's opinion, but it is distinguishable in any event. *Id.* at *1, 4 (denying motion to dismiss Section 1692f(1) claim where the plaintiffs alleged that Pierce filed a foreclosure case against them during the pendency of a grace period, where the bank had given them 30 days to seek housing counseling).

an authorization to proceed with the sale in August 2013. (Doc. 102, at 10-11). That is not accurate.

Pierce's October 19, 2016 response to the Court's email set forth in detail the file's hold history. (Doc. 102-1, at 2). Further review of the collection notes by this Court then made clear to the Court that BANA gave Pierce an "OK" to proceed with the sale of Plaintiff's property in April 2013, and on May 8, 2013, Pierce set a sale date of August 29, 2013. (Doc. 74-6, Ex. O, at 45, Pierce0044). The April 2013 "OK" was never withdrawn, though the file was placed on a FEMA hold on May 17, 2013. (*Id.*). On June 21, 2013, Pierce entered a collection note stating "file on hold per [BANA] for FEMA hold; do not proceed to judgment without confirming that file is no longer on a FEMA hold." (*Id.* at 44, Pierce0043).

Plaintiff now maintains that the FEMA hold (apparently as an alternative to the nonexistent loss mitigation hold) acted as a bar to Pierce selling his property. He offers the following rationale. The FEMA hold prohibited Pierce from proceeding to judgment, and "by effecting the Sale [of Plaintiff's property] Pierce would *in fact* be proceeding to judgment." (Doc. 102, at 11) (emphasis in original). While the Circuit Court had long ago entered a judgment of foreclosure and sale against him on November 15, 2011, he posits that this judgment was not "final" because "it is the order confirming the sale, rather than the judgment of foreclosure, that operates as the final and appealable order, and thus the final judgment, in a foreclosure case." (*Id.*) (citing *JP Morgan Chase Bank v. Fankhauser*, 383 Ill. App. 3d 254, 260, 890 N.E.2d 592, 599 (2d Dist. 2008)). In making this argument, Plaintiff is essentially attempting to re-write the collection note and turn a proscription against proceeding to "judgment" into a bar against proceeding to "final judgment." In

15

Plaintiff's view, "[a]ny other construction would make the entry regarding the FEMA hold . . . nonsensical." (*Id.*).

This Court disagrees. Pierce's corporate representative, Brian Merfeld, testified at his deposition that the FEMA hold was merely a general, system-wide hold due to rainstorms in the area. (Doc. 74-4, Ex. K, at 19, Merfeld Dep., at 63, 65; Tr. of 10/11/16 hearing). As a result, it is not unreasonable that the language would appear in all files relating to property in the affected area, including Plaintiff's, even if that property had not sustained any damage from the rainstorms, or BANA already had a judgment in hand. Notably, Plaintiff never asked BANA's corporate representative to explain the scope of the FEMA hold as it pertained to his file.

Merfeld also confirmed that given BANA's existing judgment of foreclosure, Pierce viewed Plaintiff's case as being in the "postjudgment" stage, rendering the prohibition against proceeding to "judgment" irrelevant. (*Id.* at 19, 20, Merfeld Dep., at 65, 68). Plaintiff produced no evidence to the contrary, or any authority for the proposition that the term judgment in the collection notes actually meant "final" judgment. The Court thus finds no merit to Plaintiff's assertion that Pierce was not authorized to sell his property as of August 7, 2013 due to the FEMA hold. As a result, the Court has no need to address Plaintiff's argument (once again supported by cases that were never mentioned during the course of summary judgment briefing or oral argument) that Pierce threatened to take an action "that cannot legally be taken" in violation of Section 1692e(5) given that "Pierce was simply not authorized, at the time of the mailing, to proceed to sale or judgment as a sales hold and judgment hold were in effect." (Doc. 102, at 12-15).

None of Plaintiff's arguments demonstrate that the Court made manifest errors of law, and his motion to reconsider on that basis is denied.

## **CONCLUSION**

For the reasons stated above, Plaintiff's Motion to Reconsider (Doc. 102) is denied.

ENTER:

Dated: June 2, 2017

_____
SHEILA FINNEGAN
United States Magistrate Judge